UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CUNGENG ZHENG,

                    Petitioner,

    v.

BRUCE SCOTT, ET AL,

                    Respondent.

Case No. 2:26-cv-00737-TLF

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioner Cungeng Zheng, a 61-year-old citizen and native of the People's Republic of China, is detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt.1, Petition. He was re-detained on August 8, 2025. Dkt. *Id*.

On March 3, 2026, petitioner, through counsel, filed a habeas petition. *Id*. Petitioner argues his continued detention violates due process under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 1.

Petitioner requests the Court (1) order his immediate release under appropriate conditions of supervision and (2) declare petitioner's continued detention violates the Fifth Amendment Due Process Clause as interpreted in *Zadvydas*; or, in the alternative, (3) order respondents to provide petitioner with a hearing before a neutral decisionmaker at which the government must demonstrate a significant likelihood of removal in the reasonably foreseeable future and (4) order respondents to demonstrate

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

within fourteen days, what specific steps they have taken since August 2025 to obtain travel documents from China. Dkt. 1 at 10-11. Petitioner also requests reasonable costs and attorney's fees. *Id*. at 11.

The parties consent to the jurisdiction of a Magistrate Judge. Dkt. 5.

For the reasons below, the Court GRANTS the amended habeas petition (Dkt. 1), and ORDERS respondents to release petitioner within 24 hours subject to reasonable conditions of supervision under 8 U.S.C. § 1231(a)(3).

## I.    BACKGROUND

On March 18, 2026, respondents filed a response stating petitioner had faced removal proceedings under at least "three different identities/Alien numbers." Dkt. 9, Declaration of Alixandria K. Morris ("Morris Decl."), Ex. 2 (I-213 form); Dkt. 7, Response at 2-4.[1] Each alias was linked to a separate alien registration number, but all refer to petitioner Cungeng Zheng. Dkt. 13, Petitioner's Response to Order to Show Cause.[2] Each proceeding has resulted in either an order of exclusion, removal, or denial of asylum, in absentia:

**Shuang (Sauang) Hsi Chen**: On May 10, 1991, Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA") to petitioner under the identity Shuang Hsi Chen, Alien Registration Number ("A-Number") ending in 110. Dkt. 8, Declaration of Deportation Officer Joseph Carnevale ("Carnevale Decl.") ¶ 5; Dkt. 9,

---

[1] The government does not make any legal argument in its response brief; instead, it recites the appropriate legal standards and cites to petitioner's multiple aliases. *See generally* Dkt. 7.

[2] Petitioner also notes that the "use of multiple names in various immigration proceedings during the 1990s reflects the circumstances common to undocumented immigrants of that era who navigated a complex immigration system" without access to counsel and limited English proficiency and is "not an intent to deceive this Court or any tribunal." *Id*. at 2.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

Morris Decl., Exs. 1, 2 (NTA; I-213). Petitioner did not appear because, due to his limited English proficiency and limited understanding of immigration proceedings and was unaware of the full consequences of non-appearance. Dkt. 1 at 4. On August 13, 1991, an Immigration Judge ("IJ") ordered petitioner be excluded, in absentia, to the last port of embarkation. Dkt. 9, Morris Decl., Ex. 3; Dkt. 8, Carnevale Decl. ¶ 6; Dkt. 1 at 4. A motion to reopen those proceedings was denied on October 16, 2007. Dkt. 8, Carnevale Decl. ¶ 15.

**Cungeng Zheng**: On June 15, 1992, petitioner submitted an asylum application under the identity Cungeng Zheng, A-Number ending in 915. *Id*. ¶ 7. On January 12, 1994, INS denied that asylum application. *Id.* ¶ 8.

**Qun Geng Cheng**: On April 17, 1996, INS issued petitioner an NTA under the identity Qun Geng Cheng, A-Number ending in 544. *Id.* ¶ 9. On November 25, 1997, an IJ ordered petitioner removed to China under that A-Number. *Id*. ¶ 12; Dkt. 9, Morris Decl., Ex. 4. On September 27, 2007, a motion to reopen proceedings was denied. Dkt. 8, Carnevale Decl. ¶ 14

**Wang Chan**: On January 27, 1997, petitioner submitted an asylum application under the identity Wang Chan, A-Number ending in 302 and INS referred petitioner to an IJ the same day. *Id.* ¶ 10. On February 20, 1997, an IJ ordered petitioner removed. *Id*. ¶ 11. On August 23, 2007, "petitioner's removal case under identity Wang Chan, A-Number ending in 302 was closed as a self-removal indicating a possible departure from the United States." *Id*. ¶ 13.

Petitioner contends the operative removal order is the exclusion order entered on August 13, 1991, under the name Shuang Hsi Chen. Dkt. 13. That order became

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

administratively final, at the latest, on May 12, 2008, when the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal of the denial of his motion to reopen. *Id*.

On August 7, 2025, USCIS approved a form I-130 petition (Petition for Alien Relative, Parent of U.S. Citizen, INA 201(b).), filed by petitioner's U.S. born child, Fred Fu Zheng. *Id.* ¶ 16; Dkt. 1, Petition at 4. On August 8, 2025, ICE officers detained petitioner while he was driving to work. *Id*. at 5.

After being moved from facility to facility, on August 15, 2025, petitioner was transferred to NWIPC. *Id*. Upon arrival, petitioner was asked for basic biographical information and explained that "he owns his home, operates a takeout restaurant with his family, has resided in the United States for many years, and has all immediate family members residing in the United States." *Id*. ICE required him to sign documents and took his photograph. *Id.*

While petitioner was in custody, on September 2, 2025, petitioner's Application to Register Permanent Residence or Adjust Status, Parent of a U.S. Citizen, was denied. Dkt. 8*,* Carnevale Decl. ¶ 18.

On or about November 5, 2025, Mr. Zheng was questioned again by ICE. Dkt. 1 at 5. ICE informed him that he has a removal order and that, because he originally entered the United States with a Taiwanese passport, they intended to remove him to Taiwan. *Id*. Petitioner apparently explained that he is a citizen of China, not Taiwan, and inquired whether he would instead be removed to China. *Id*. ICE provided him with three forms, but, because petitioner does not understand English, he did not complete them. *Id*. ICE again took his photograph. *Id*.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

On or about November 26, 2025, ICE approached petitioner and asked whether he would return to his home country, again requesting he sign documents. Dkt. 1 at 6. Petitioner explained that his family resides in the United States and that he has consistently filed taxes. *Id*. ICE reviewed and completed an identity verification form but did not require his signature. *Id*.  His photograph was taken again. *Id*. Since that time, he has allegedly received no updates regarding his removal. *Id*.

## II.   Discussion

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

### A. Post Removal Order Detention under *Zadvydas*

The authority of ICE to detain noncitizens under federal law, 8 U.S.C. § 1231, directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins to run, as relevant here, on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). When, as here, the order is entered in absentia*,* 8 C.F.R. § 1241.1(e) states the order becomes administratively final immediately upon entry of the order. But case law reflects that the order in fact becomes final upon the earlier of (1) the 180-day period to file a motion to reopen expires, or (2) the BIA affirms the order. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021).

Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. In *Zadvydas*, the Supreme Court considered the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

provisions of 8 U.S.C. § 1231(a)(6) and imposed constitutional limits on the indefinite detention of noncitizens. The Supreme Court held that the Due Process Clause prohibits detention beyond the period reasonably necessary to effectuate removal because "freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the] Clause protects." *Id.* at 690.

The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id*.; *see Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018). Once "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. *Zadvydas*, 533 U.S. at 699. The noncitizen may be released on an Order of Supervision ("OSUP"). 8 C.F.R. § 241.13(h).

Here, regardless of which removal order is operative, the removal period expired many years ago.

Petitioner, in the alternative, argues his removal to China is not reasonably foreseeable and that his continued detention therefore violates *Zadvydas*. Dkt. 11, Traverse. Petitioner has been detained for approximately eight months, well beyond the six-month presumptively reasonable period. Petitioner notes over thirty years have

passed since the first removal order became final, cites to a history of China's lack of cooperation in removing Chinese nationals, and the government's lack of meaningful process in securing any travel documents. *See* Dkt. 1,11, 13.

In response, the government does not address or make any argument as to the likelihood of removal or identify specific steps it has taken to effectuate the removal. The government asserts no valid statutory basis for continued detention, and the record reflects petitioner has no criminal history. Dkt. 9, Declaration of Alixandria K. Morris ("Morris Decl."), Ex. 2 (I-213 form).

On this record, the Court finds that petitioner has met his burden under *Zadvydas*, and the government has failed to rebut his showing. Accordingly, petitioner's continued detention violates the Due Process Clause.

### III.   Conclusion

The Court GRANTS the petition for writ of habeas corpus (Dkt. 1) and ORDERS:

1. The government shall release petitioner from custody within 24 hours of the filing of this Order, subject to reasonable conditions of supervision under 8 U.S.C. § 1231(a)(3).

2. No later than two days after petitioner's release (for example, if petitioner is released on a Monday, then the government shall file the declaration no later than Wednesday; or, if petitioner is released on a Friday, then the declaration shall be filed no later than the following Monday) the government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

2.  The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.


Dated this 10th day of April, 2026.


*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8